# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JUSTIN D. BUCHANAN, | ) | No. 74565-4-I |
| Appellant, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| DEPARTMENT OF LABOR AND | ) | UNPUBLISHED OPINION |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON, | ) ) | |
| Respondent. | ) | FILED: December 5, 2016 |

SPEARMAN, J. — Under the going and coming rule, a worker is generally not within the course of employment while traveling between home and the jobsite. Justin D. Buchanan traveled to a jobsite to retrieve personal tools that he had stored at the site. While returning home, he was injured. The superior court denied his claim for worker's compensation, holding that the injury did not occur during the course of employment. Because Buchanan fails to show that an exception to the going and coming rule applies, we affirm.

## FACTS

Buchanan is a carpenter who worked through a placement agency, Madden Industrial Craftsmen, Inc. Madden contracts with construction companies to provide laborers at an agreed pay rate. Tradesmen who work for

Madden contact the company when they are seeking a job assignment. Workers may accept or decline any assignment. The worker receives a portion of the hourly rate paid by the customer and Madden retains a portion as its fee. Madden employees are responsible for their own transportation. Per industry standard, carpenters provide and maintain their own tools.

Buchanan worked for Madden for about three years on several different construction projects. Buchanan, who does not drive, used public transportation to commute to jobsites. He carried his tools in a backpack that, when loaded, weighed about one hundred pounds. On most jobs, Buchanan could securely leave his tools at the site during the project to avoid carrying them on his commute each day. If Buchanan could not safely store his tools at the jobsite, he took them home each night.

In the summer of 2013, Buchanan was working, through Madden, at a project in Fremont. Buchanan commuted from his home in Kent, which took one to two hours each way. He left his tools in a secure location at the Fremont jobsite each night.

One day, carpenters were released from the jobsite early to allow electricians to work on the project. Buchanan expected to return the next day and he stored his tools on site. While Buchanan was on his way home, he received a call from the project manager informing him that work was nearing completion and Buchanan was no longer needed. Buchanan called Madden and left a message reporting that the Fremont job had ended.

A Madden employee returned Buchanan's call and offered him a new assignment starting the next day. Buchanan accepted. Buchanan did not tell Madden that he had left his tools at the Fremont site or that he would return to get them.

Buchanan returned to Fremont and arrived at the site in the early evening. He retrieved his tools and began his journey home. The light rail was crowded and Buchanan had to stand with his backpack. He began to experience back pain when he transferred from the light rail to a bus. The bus was also crowded and Buchanan again had to stand. When Buchanan got off the bus and began the short walk home, the pain in his back increased. Eventually, his back gave out and he fell. Buchanan went to the hospital the following morning. He stated that he was diagnosed with decompression of a disk in his spine.

Buchanan filed an industrial insurance claim. The Department of Labor & Industries concluded that the injury did not occur while Buchanan was in the course of his employment and denied the claim. Buchanan appealed to the Board of Industrial Insurance Appeals (BIIA), which granted summary judgment for the Department. Buchanan appealed to the superior court, which concluded as a matter of law that Buchanan was not acting in the course of his employment when he was injured. The superior court granted summary judgment in favor of the Department and affirmed the Board's decision. Buchanan appeals.

## DISCUSSION

Buchanan argues that the superior court erred in concluding that his injury did not occur in the course of his employment and thus was not covered by the Industrial Insurance Act (IIA), Title 51 RCW.

We review the trial court's decision on summary judgment de novo, engaging in the same inquiry as the trial court. Cochran Electric Co., Inc. v. Mahoney, 129 Wn. App. 687, 692, 121 P.3d 747 (2005) (citing Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)). In an action under the IIA, the decision of the BIIA is prima facie correct. Id. at 692 (citing RCW 51.52.115). The burden of proof is on the party challenging the board's determination. Id. (citing Belnap v. Boeing Co., 64 Wn. App. 212, 216-17, 823 P.2d 528 (1992)).

A worker who is injured "in the course of his or her employment" is entitled to benefits under the IIA. RCW 51.32.010. A worker is "in the course of employment" when the worker is "acting at his or her employer's direction or in the furtherance of his or her employer's business . . . ." RCW 51.08.013(1). An employee's trips between home and work are generally outside the course of employment, a principle known as the going and coming rule. Belnap, 64 Wn. App. at 221. An exception to the going and coming rule exists for trips that serve a dual purpose. Cochran, 129 Wn. App. at 695-96 (citing In re Marlene Ann Martin, BIIA, Docket No. 852862 (1987)).

Buchanan asserts that his trip to retrieve his tools falls within the dual purpose exception to the going and coming rule. The dual purpose exception

4

applies when an employee is injured in transit and the travel "served both a business and personal purpose." Id. at 695-96 (citing Martin, BIIA, Docket No. 852862). The key issue is whether the trip was necessary to the business. Id. (citing Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181 (1929)). The BIIA has phrased the test as whether "the business mission [was] of such character or importance that it would have necessitated a trip by someone [else] if this employee had not been able to handle it in combination with his homeward (or business-ward) journey[.]'" Martin, BIIA, Docket No. 852862 at 2 (quoting 1 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION, §18.21, at 4-277).

Buchanan contends that his trip to retrieve his tools served both a business and a personal purpose. He reasons that, because Madden profited from his work by retaining a portion of his wages, it was in Madden's interest for Buchanan to work the following day. Buchanan asserts that he would not have been able to work the next day without his tools and thus, retrieving the tools served Madden's business interest.[1]

In support of the argument, Buchanan asserts that his case is similar to Cochran. But the case is distinguishable. In Cochran, an employee, Mahoney, worked for Cochran Electric Company. 129 Wn. App. at 690. On a day off, Mahoney took a company van to a garage for servicing. Id. at 691. While riding his bike home from the garage, Mahoney was fatally struck by a car. Id. Cochran

---

[1] Buchanan also asserted at oral argument that if he had not picked up his tools from the Fremont jobsite, Madden may have sent someone else to retrieve them. We reject this argument. The tools were Buchanan's personal property that he left at the jobsite for his own convenience. There is no indication in the record that retrieving Buchanan's tools was necessary to Madden or that Madden would have sent some other employee to retrieve them.

5

asserted that, under the going and coming rule, the injury did not occur in the course of employment. Id. at 693. Cochran argued against applying the dual purpose exception because the company did not require Mahoney to take the van to the garage on his day off and Mahoney chose to return home by bike for exercise, a personal purpose. Id. at 696.

This court rejected Cochran's argument. Id. We held that, even if Mahoney had a personal purpose in riding his bike home from the garage, the return trip was "merely incidental to dropping off the van for servicing." Id. We held that the worker was acting within Cochran's guidelines for maintaining company vehicles and took the van for servicing in furtherance of the company's interest. Id. at 700.

Buchanan argues that, like the employee in Cochran, he was injured while performing a special trip in furtherance of his employer's interest. He asserts that Madden's requirement that carpenters report to work with their tools is similar to the requirement in Cochran that employees keep company-owned vehicles in good repair.

We disagree. In Cochran, the company required employees to maintain company vehicles. The errand was necessary to the employer so that, had Mahoney not taken the van to the garage, the company would have required some other employee to do it. But here, Buchanan points to nothing in the record suggesting that his trip was required by Madden or necessary to Madden's business purpose. Cochran is inapposite and is of no help to Buchanan.

Buchanan next relies on three cases that he asserts illustrate the dual purpose exception. See Hobson v. Dep't of Labor & Indus., 176 Wash. 23, 26, 27

P.2d 1091 (1934) (concluding that a watchman at a logging camp was acting in the course of employment when the worker was on duty 24 hours a day, was using a company vehicle, and was returning to camp after picking up food supplies); MacKay v. Dep't of Labor & Indus., 181 Wash. 702, 704, 44 P.2d 793 (1935); (holding that the owner and operator of a tractor, hired to construct a road, was acting in the course of employment when he left the work site and travelled to a garage to have a tractor part repaired); Leary v. Dep't of Labor & Indus., 18 Wn.2d 532, 541-42, 140 P.2d 292 (1943) (concluding that a gateman was on duty when, during his usual business day, he used a personal vehicle to try to remove an obstruction from the gateway). But these cases do not address the going and coming rule or the dual purpose exception. And none of these cases involve circumstances similar to those here, where the employee made a special trip to a jobsite to retrieve personal property. We conclude that Buchanan's trip to pick up his tools was not within the dual purpose exception.

Buchanan next contends that he was acting in the furtherance of Madden's business by picking up his tools. He asserts that his trip to retrieve his tools furthered Madden's business because Madden stood to profit if Buchanan worked the next day.

Under RCW 51.08.013, a worker is "[a]cting in the course of employment" when the worker is "acting at his or her employer's direction or in the furtherance of his or her employer's business . . . ." Buchanan contends that travel that furthers the employer's business is an exception to the going and coming rule. But because he provides no authority to support this proposition, we do not

consider the argument. <u>Burke v. Hill</u>, 190 Wn. App. 897, 916, 361 P.3d 195

(2015) <u>review denied</u>, 185 Wn.2d 1020, 369 P.3d 501 (2016) (citing <u>Cowiche</u>

<u>Canyon Conservancy v. Bosley</u>, 118 Wn.2d 801, 809, 828 P.2d 549 (1992)).

Finally, Buchanan relies on <u>In re Julie Trusley</u>, BIIA Docket No. 93 3124,

1994 WL 732115 (1994). App. Br. at 28. In that case, a teacher slipped and fell in

a school parking lot while carrying teaching supplies into the school. <u>Id.</u> at 1.

Although an employee is generally not in the course of employment while in the

parking lot, the BIIA held that the teacher was performing part of her job in

transporting essential supplies into the school. <u>Id.</u> By way of contrast, the BIIA

referred to a case in which an employee was injured during her commute home

from work while transporting work-related materials. <u>Id.</u> at 2. In that case, the

BIIA applied the going and coming rule and concluded that the worker was not

acting in the course of employment. <u>Id.</u> The BIIA stated that Trusley's case was

distinguishable because she was not injured during her commute but needed "to

handle or transport the critical tools of the trade after arriving at the jobsite . . . ."

<u>Id.</u>

Buchanan argues that, like the teacher in <u>Trusley</u>, he was injured while

transporting materials necessary to his job. But <u>Trusley</u> noted that the outcome

would have been different had the teacher been injured on her way to or from

work. We conclude that <u>Trusley</u> does not support Buchanan's argument.

Buchanan's injury occurred during a trip from his jobsite to his home. Trips

to and from work are generally not part of an employee's course of employment

under the going and coming rule. Buchanan has not shown that his trip was

No. 74565-4-I/9

within an exception to the going and coming rule. We conclude that the trial court did not err in determining that Buchanan's injury did not occur in the course of his employment.[2]

Affirmed.

WE CONCUR:

_Spearman, J._

_Mann, J._

_Schindler, J._

---

[2] Because we affirm the superior court, we do not address the Department's argument against awarding attorney fees to Buchanan if he prevails.

9